UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL ACTION NO. 04-54-DCR

UNITED STATES OF AMERICA,                                         PLAINTIFF,

V.                          **MAGISTRATE JUDGE'S REPORT &**
                            **RECOMMENDATION**

LEON COMBS,                                                       DEFENDANT.

*** *** *** ***

## I.  INTRODUCTION and BACKGROUND

The Defendant, Leon Combs, brings this action pursuant to 28 U.S.C. § 2255 seeking to

vacate, set aside, or correct his sentence. [Rs. 52, 64, 67, 78, 98].  For the reasons discussed below,

the Court will recommend that the Defendant's motions be denied.  The factual summary of these

proceedings is based on the Sixth Circuit's opinions rendered following the Defendant's appeals.

U.S. v. Combs, 218 Fed. Appx. 483 (6th Cir. 2007) (Combs II); U.S. v. Combs, 369 F.3d 925 (6th

Cir. 2004) (Combs I).

The first indictment against Combs was returned January 25, 2001.  Combs, 369 F.3d at 929.

A jury subsequently convicted him of Counts I through IV of that indictment.  Count I charged

Combs with violating 21 U.S.C. § 841(a)(1) by possessing and distributing OxyContin, a Schedule

II controlled substance.  Id.  Count IV charged a violation of 18 U.S.C. § 924(c), alleging that

Combs "in furtherance of a drug trafficking crime ... did unlawfully possess firearms ... ." Id. at 930.

Count IV stems from an incident where Josh Miller traded three firearms with Combs for drugs.  Id.

Miller informed the police about these and other trades.  The police thereafter obtained a search

warrant for Combs's residence, where they recovered the guns that Miller traded for the drugs.  Id.

During a search of the residence, officers observed Combs drop an object into his pants.  After

searching him, they found a loaded pistol, along with OxyContin and Dialudid pills.  This led to

Count II, alleging another violation of 21 U.S.C. § 841(a)(1).  Count III followed from the loaded

pistol, an additional charge under 18 U.S.C. § 924(c) alleging that Combs "during and in relation

to a drug trafficking crime ... did possess a ... pistol ... ."  Id.

Combs appealed to the Sixth Circuit, which overturned his convictions on the firearms

charges - Counts III and IV.  First, with respect to Count III, the Court of Appeals held that the

indictment was insufficient because it failed to charge Combs with an offense under § 924(c).  Id.

at 934.  Second, the Court of Appeals held that, although Count IV of the indictment properly

charged a § 924(c) "possession" offense, this Court impermissibly amended the indictment by

intermixing the elements of the "use" and "possession"  § 924(c) offenses in its jury instructions.

Id. at 935-36.  The Court of Appeals then affirmed the remainder of Combs's conviction and ordered

the case remanded "for re-sentencing and further proceeding consistent with this opinion."  Id. at

941.

Following the Sixth Circuit's reversal of Combs's convictions on Counts III and IV, the

United States obtained a second indictment on July 22, 2004. [No. 6:04-cr-54-JMH, R. 1].  The

purpose of the second indictment was to correct the error made in the original indictment with

respect to Count III.  Count I of the new indictment charged Combs with violating § 924(c) by

knowingly using and carrying a firearm during and in relation to a drug trafficking crime - the drug

trafficking crime being Count II of the first indictment.  Count II of the new indictment charged

Combs with violating § 924(c) by knowingly possessing three firearms in furtherance of a drug

trafficking crime.

Combs opted for a bench trial and was found guilty on both charges. <u>Combs</u>, 218 Fed. Appx. at 484. He was sentenced on December 27, 2004. On that same day, pursuant to the Sixth Circuit's remand order in <u>Combs I</u>, the Court dismissed the two firearms charges contained in the first indictment. <u>Id.</u> Combs then appealed his conviction on the firearms charges in the second indictment. On appeal, Combs argued first, that the evidence was insufficient to convict him, and second, that there was a prejudicial variance between the evidence and the offense charged in the second count of the indictment. <u>Id.</u> The Court of Appeals found his arguments to lack merit and affirmed Combs's convictions on both firearms charges. <u>Id.</u>

## II. CLAIMS ASSERTED

The history of this habeas action is long and convoluted. Combs filed his first § 2255 petition over two years ago on March 17, 2009. [R. 52]. Upon a request by the United States, however, the matter was stayed pending the Supreme Court's decisions in <u>Gould v. United States</u>, 130 S.Ct. 1283, and <u>Abbott v. United States</u>, 130 S.Ct. 1284. [R. 66]. The stay was lifted on January 3, 2011, however, in the intervening time, Combs filed a number of additional § 2255 petitions and supplements to those petitions. [<u>See</u> Rs. 64, 67, 78, 79, 80, 81, 95, 98]. Although many of these purport to raise new or additional grounds for relief, most of his arguments are related to the same issues. For the sake of clarity, the Court has reviewed and summarized the claims made by Combs in his numerous and repetitive filings. Each of the following claims will be addressed in turn:

(1) The District Court acted outside the scope of the Sixth Circuit's mandate when it continued Combs's re-sentencing and tried, convicted, and sentenced him on the charges in the second indictment;

(2) The second trial violated Combs's Fifth Amendment right not to be placed twice in jeopardy for the same offense;

3

(3)    Combs's conviction on Count 2 of the second indictment was unconstitutional because the Supreme Court, in <u>Watson v. United States</u>, 552 U.S. 74 (2007), held that the statute under which Combs was convicted does not criminalize his act of trading drugs for firearms;

(4)    The statute under which Combs was convicted was constitutionally void for vagueness;

(5)    Combs's trial and appellate counsel performed ineffectively by failing to argue either a violation of his double jeopardy rights, that the Court was acting outside the scope of the Sixth Circuit's mandate, or the Court's lack of jurisdiction;

(6)    The District Court erred by sentencing Combs to two mandatory minimum sentences under § 924(c), because that statute prohibits such dual sentences;

(7)    The prosecution committed fraud on the Court by failing to move for dismissal of Counts III and IV in the first indictment prior to re-indicting Combs for the same conduct.

In addition to his numerous § 2255 motions and supplements thereto, Combs has also filed a number of motions seeking recusal of the presiding judge or, in the alternative, transfer of venue. [See Rs. 54, 69, 75, 77, 85]. Although Judge Hood eventually recused himself in order to "placate" Combs, his most recent motion has been denied by Judge Reeves. [Rs. 86, 87]. His appeal of that decision having also been denied, this matter is now ripe for review. [Rs. 88, 96].

III. ANALYSIS

**(1)    Did the District Court violate the mandate of the Sixth Circuit?**

The Defendant alleges that this Court violated the Sixth Circuit's mandate following his first appeal and was therefore without subject matter jurisdiction to hear the charges set forth in the second indictment. The United States argues that Combs is procedurally barred from raising this claim in a motion for post-conviction relief because he failed to raise it on direct appeal. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or

4

that he is actually innocent." Bousley v. United States, 523 U.S. 614, 622 (1998) (internal citations and quotations omitted). Combs, however, has asserted that his attorney performed ineffectively by failing to argue the mandate issue on appeal, and ineffective assistance of counsel may establish the requisite cause. Washington v. Hofbauer, 228 F.3d 689, 698 (6th Cir. 2000). In fact, Combs's appellate counsel raised the mandate violation issue, but failed to argue it. Combs, 218 Fed. Appx. at 488 (defense counsel raised the mandate issue "in a perfunctory manner without any development", and therefore the issue was deemed waived).

In order to prevail upon an ineffective assistance of counsel claim, the defendant must first show that "counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). Second, he must demonstrate that the deficient performance prejudiced the defense. Id. at 687; see also Hill v. Lockhart, 474 U.S. 52, 58 (1985). The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential. ... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. In the present case, Combs cannot show that his attorney's failure to argue the mandate issue was either objectively unreasonable or prejudicial. Accordingly, both of his claims relating to the allegation that the Court violated the Sixth Circuit's mandate should be denied.

The mandate rule is "a specific application of the law-of-the-case-doctrine" that limits the district court on remand from the court of appeals. Scott v. Churchill, 377 F.3d 565, 570 (6th Cir. 2004). It dictates that

> [u]pon remand of a case for further proceedings after a decision by the appellate
> court, the trial court must 'proceed in accordance with the mandate and the law of

the case as established on appeal.' The trial court must 'implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.'

United States v. Moored, 38 F.3d 1419, 1421 (6th Cir. 1994) (quoting United States v. Kikumura, 947 F.2d 72, 76 (3d Cir. 1991)).

In the Combs I opinion, the Sixth Circuit's mandate reads as follows:

we reverse Combs's convictions on Count III and Count IV. We affirm the remainder of his conviction and remand this case to the district court for resentencing and further proceeding consistent with this opinion.

Combs, 369 F.3d at 941. On remand, the Court initially set a resentencing for July 26, 2004. [No. 7:01-cr-17, R. 79]. Before that could occur, however, the United States obtained a second indictment charging Combs with two § 924(c) violations stemming from the same conduct that formed the basis of those convictions that had just been reversed. The Court ordered the resentencing proceedings stayed pending resolution of the charges in the new indictment. [No. 7:01-cr-17, R. 88]. This Order also stated that the Sixth Circuit had remanded Combs I "for resentencing on Counts I and II ... ." Id. The Court, however, has never actually resentenced Combs on Counts I and II of the first indictment. It also did not dismiss Counts III and IV until after Combs was found guilty of both charges in the second case. [No. 7:01-cr-17, R. 94]. Combs now argues that because the Court failed to (1) resentence him on Counts I and II and (2) dismiss Counts III and IV before holding a bench trial on the charges in the second indictment, the Court violated the Sixth Circuit's mandate and was without jurisdiction to try him in the second case.

In support of his argument Combs cites language from a Ninth Circuit case, United States v. Thrasher, 483 F.3d 977 (9th Cir. 2007). In Thrasher, the Court of Appeals stated that, in the Ninth Circuit, "if a district court errs by violating the rule of mandate, the error is a jurisdictional one."

Id. at 982.  Combs argues that based on the mandate issued in Combs I, this Court was without "jurisdiction" to do anything other than resentence him on Counts I and II and dismiss Counts III and IV.  It is not altogether clear whether the mandate rule is a jurisdictional issue in the Sixth Circuit,  Compare Tapco Products Co. v. Van Mark Products Corp., 466 F.2d 109, 110 (6th Cir. 1972) (district court is without jurisdiction to modify or change mandate issued by Court of Appeals), with Mylant v. United States, 48 Fed. Appx. 509, 512 (6th Cir. 2002) ("[t]he mandate rule is a rule of policy and practice, not a jurisdictional limitation ... .") (quoting United States v. Moore, 83 F.3d 1231, 1234 (10th Cir. 1996)), and Petition of United States Steel Corp., 479 F.2d 489, 494 (6th Cir. 1973) (explaining the exceptions to the mandate rule), but that determination does not affect the outcome of this case.

Courts of appeals have discretion to issue general or limited remands.  United States v. Campbell, 168 F.3d 263, 265 (6th Cir. 1999).  "Limited remands explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate.  ...  General remands, in contrast, give district courts authority to address all matters as long as remaining consistent with the remand."  Id. (citing United States v. Moore, 131 F.3d 595, 597-98 (6th Cir. 1997)).  In order to impose a limited remand, the Court of Appeals "must convey clearly the intent to limit the scope of the district court's review by outlining the procedure the district court is to follow, articulating the chain of intended events, and leaving no doubt as to the scope of the remand."  United States v. Shafer, 23 Fed. Appx. 380, 382 (6th Cir. 2001).  Absent such express restrictions, "the remand order is presumptively a general one."  Moore, 131 F.3d at 598.

Based on these principles, the mandate in Combs I was general and did not foreclose the Court from having "jurisdiction" over the charges levied in the second indictment.  The only express

instruction announced in the opinion was to resentence Combs.[1]  Nothing in the Sixth Circuit's opinion or mandate prohibited the Court from retrying Combs for the § 924(c) offenses.  In fact, on at least two occasions the Sixth Circuit tacitly acknowledged that this Court had followed its mandate.  First, in <u>Combs II</u> the court stated that "the district court, pursuant to this court's remand order, dismissed the two firearms charges contained in the original indictment."  <u>Combs</u>, 218 Fed. Appx. at 484.  In an Order denying Combs's petition for a writ of mandamus, the Sixth Circuit stated that on the same day this Court sentenced Combs in the second case, it "also dismissed the original firearm charges pursuant to this court's opinion."  <u>In re Leon Combs</u>, No. 08-6248 (6th Cir. Dec. 17, 2008).  Although Combs takes issue with the fact that remand proceedings were stayed pending the outcome of his second case, the Court of Appeals never imposed any time limits, conditions, or special instructions.   The Sixth Circuit simply reversed his convictions on Counts III and IV and this Court complied with the mandate by dismissing those Counts.  [No. 7:01-cr-17-JMH, R. 94].

Because Combs's mandate claim is without merit, his attorney's failure to argue it on appeal was not objectively unreasonable or prejudicial.  <u>Jones v. Barnes</u>, 463 U.S. 745, 751-54 (1983) (appellate counsel does not have a duty to raise every non-frivolous issue suggested by a defendant). Accordingly, his claim that the Court violated the Sixth Circuit's mandate should be denied, along with his related claim of ineffective assistance of counsel.

**(2)      Did the Second Indictment Violate Combs's Double Jeopardy Right?**

Combs next argues that his Fifth Amendment right to not be placed twice in jeopardy for the same offense was violated when he was indicted and tried for the same conduct twice.  The United

---

[1] It would appear that the Court may have erred by not resentencing Combs on Counts I and II of the first indictment.  His motion, however, does not seek to vacate, set aside, or correct his sentence on those Counts, and thus, the issue is not before the Court.

States again argues that this claim is procedurally barred because Combs failed to argue it on direct appeal. Like the mandate issue, however, Combs requested that his attorney argue a Double Jeopardy violation on appeal. Combs's attorney raised the issue, but failed to argue or develop it. Accordingly, the Sixth Circuit deemed the issue waived and did not address the merits. Combs, 218 Fed. Appx. at 488. Combs now claims that his appellate counsel rendered ineffective assistance by failing to argue a Double Jeopardy violation. Because Combs's Double Jeopardy claim ultimately lacks merit, his attorney did not perform ineffectively by failing to develop it on appeal.

A. Count I of the Second Indictment

On January 22, 2001, while executing a search warrant at Combs's residence, police officers observed Combs dropping an object down the front of his pants. The officers searched Combs and found that he was carrying a loaded .22 caliber pistol and numerous OxyContin and Dialudid pills. This conduct led to Count III of the first indictment, which provided that Combs "during and in relation to a drug trafficking crime ... did possess a ... pistol ..." in violation of 18 U.S.C. § 924(c). [No. 7:01-cr-17-JMH, R. 1]. A jury convicted Combs of Count III and the Court sentenced him to 60 months. The Sixth Circuit, however, reversed Combs's conviction on this Count, finding that the indictment was "insufficient as failing to charge him with a criminal offense." Combs, 369 F.3d at 929. This outcome was predicated on the Sixth Circuit's determination that § 924(c) criminalizes two separate offenses:

> [A]ny person who, **during and in relation** to any crime of violence or drug trafficking crime ... for which the person may be prosecuted in a court of the United States, **uses or carries** a firearm, ("use" offense)
>
> or
>
> who, **in furtherance of** any such crime, **possesses** a firearm, shall, in addition to the punishment for such crime of violence or drug trafficking crime[ receive an

additional penalty]. ("possession" offense)

Comb, 369 F.3d at 930 (emphasis in original).  Because the original indictment charged Combs with **possessing** a firearm **during and in relation** to a drug trafficking crime, it was insufficient to charge him with either of the "use" or "possession" offenses found in § 924(c).  In an attempt to correct this error in the indictment, the United States obtained a second indictment on July 22, 2004. [R. 1].  Count I of the second indictment concerned the same conduct as Count III of the first indictment, but this time, alleged that Combs "**during and in relation** to a drug trafficking crime, ... did knowingly **use and carry** a firearm ... in violation of 18 U.S.C. § 924(c)(1)(A)(i)." [Id.] (emphasis added).  The second indictment, therefore, correctly charged Combs with a §924(c) "use" offense.

B.  Count II of the Second Indictment

In late 2000 or early 2001, Josh Miller traded three of his father's guns to Combs in exchange for drugs.  Combs, 369 F.3d at 930.  As a result of this conduct, Count IV of the first indictment alleged that Combs, "in furtherance of a drug trafficking crime[,] ... did unlawfully possess firearms ... ."  Id.  A jury convicted Combs of Count IV and he was sentenced to 300 months.  Although Count IV properly charged Combs with a "possession" offense, on appeal, the Sixth Circuit reversed his conviction because the Court impermissibly amended the indictment.  In its jury instructions, the Court cross-matched the elements of the "possession" offense with the elements of the "use" offense:

> There are two essential elements which must be proven beyond a reasonable doubt in order to establish the offense proscribed by this law:
>
> First: That on or about the date and place alleged in the indictment, the defendant, Leon Combs possessed a firearm, (from the "possession" offense) and
>
> Second: That he did so during and in relation to (from the "use" offense) a drug trafficking crime.

Id. at 935.  The Court of Appeals found the jury instructions to amount to an impermissible amendment of the indictment.  In the second indictment, the government again alleged that by trading drugs for guns, Combs "in furtherance of a drug trafficking crime, ... did knowingly possess three firearms ... in violation of 18 U.S.C. § 924(c)(1)(A)(i)." [R. 1].

## C.  Analysis

Combs argues that the second trial violated his Fifth Amendment rights because he had already been tried once for the same firearm related conduct that gave rise to the second indictment. The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy."  "It has long been settled, however, that the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction." Lockhart v. Nelson, 488 U.S. 33, 38 (1988) (citations omitted).  The Supreme Court has recognized an exception to this general rule, but the exception is inapplicable here.  In Burks v. United States, 437 U.S. 1 (1978), the Court "held that when a defendant's conviction is reversed by an appellate court on the sole ground that the evidence was insufficient to sustain the jury's verdict, the Double Jeopardy Clause bars a retrial on the same charge." Lockhart, 488 U.S. at 39 (citing Burks, 437 U.S. at 18).  Put differently, "[i]t is a 'venerable principl[e] of double jeopardy jurisprudence' that '[t]he successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict ... poses no bar to further prosecution on the same charge.'" Montana v. Hall, 481 U.S. 400, 402 (1987) (citations and quotations omitted).

Burks

> was based on the view that an appellate court's reversal for insufficiency of the
> evidence is in effect a determination that the government's case against the defendant
> was so lacking that the trial court should have entered a judgment of acquittal, rather
> than submitting the case to the jury. Because the Double Jeopardy Clause affords the
> defendant who obtains a judgment of acquittal at the trial level absolute immunity
> from further prosecution for the same offense, it ought to do the same for the
> defendant who obtains an appellate determination that the trial court should have
> entered a judgment of acquittal.

Lockhart, 488 U.S. at 39 (citations omitted). Based on this rationale, the Double Jeopardy clause

will bar retrial where a reversal or dismissal is the "functional equivalent" of acquittal. See, e.g.,

McDaniel v. Brown, – U.S. – , 130 S.Ct. 665, 672 (2010); United States v. Davis, 873 F.2d 900, 906

(6th Cir. 1989).

Despite his best efforts, Combs has failed to convince the Court that the Sixth Circuit's

reversal of his convictions on Counts III and IV of the first indictment was the equivalent of an

acquittal. First, with respect to Combs's possession of the .22 caliber pistol, the Sixth Circuit

reversed his conviction on Count III of the first indictment, not due to a lack of evidence, but

because the indictment was insufficient to charge a criminal offense. It is well settled that the

reversal of a conviction based on a flawed indictment does not bar retrial. Hall, 481 U.S. at 403-04

("It is clear that the Constitution permits retrial after a conviction is reversed because of a defect in

the charging instrument."); Lee v. United States, 432 U.S. 23 (1977) (reprosecution of defendant not

barred by Double Jeopardy clause where information failed to allege the requisite intent required

by underlying criminal statute); United States v. Ball, 163 U.S. 662, 672 (1896) (Double Jeopardy

clause did not protect a defendant from retrial after the trial court initially dismissed the case due

to a flawed indictment). In the present case, the Court of Appeals did not address the evidence

presented during Combs's first trial, nor did it express an opinion concerning his guilt or innocence.

Combs's conviction on Count III was reversed for only one reason; the Court of Appeals found "the indictment insufficient as failing to charge him with a criminal offense." Combs, 369 F.3d at 329.

Next, with respect to Combs's act of trading drugs for firearms, the Court of Appeals did not reverse his conviction because the evidence was insufficient, but rather because of an error in the jury instructions. Like reversal due to a faulty indictment, reversal based on erroneous jury instructions is not the equivalent of an acquittal, but rather is a type of "trial error" that does not bar retrial of the defendant. Burks, 437 U.S. at 15. "When, as here, the defendant's conviction is overturned due to a jury instruction error, the government may retry the defendant as to the charge of conviction ... ." Brazzel v. Washington, 491 F.3d 976, 981 (9th Cir. 2007).

Combs nevertheless argues that his second trial was barred by the rule announced in Saylor v. Cornelius, 845 F.2d 1401 (6th Cir. 1988). In Saylor, the defendant was charged with murder as a principal and as an accomplice, and murder by conspiracy. During the trial, evidence was introduced supporting accomplice liability, but no evidence was introduced to show that he participated in a conspiracy to commit murder. At the close of trial, the judge instructed the jury on the charge of conspiracy liability. The prosecutor failed to correct this error by requesting an accomplice liability instruction. A jury found Saylor guilty of murder, but his conviction was reversed on appeal on the ground that the evidence was insufficient to support a conspiracy conviction. In a subsequent opinion, the Kentucky Supreme Court held that Saylor could be retried on the theory of accomplice liability.

Saylor filed a § 2254 petition claiming that a retrial was barred by the Double Jeopardy Clause. The Sixth Circuit agreed, holding that under the specific circumstances of that case, "where the first trial ended without a verdict on the relevant charge for reasons of the prosecution's making,

a retrial on that charge would violate the protection the Double Jeopardy Clause affords against harassing reprosecution." Saylor, 845 F.2d at 1403. Saylor, therefore, "abandons the traditional rule that any reversal besides insufficiency of the evidence is not the equivalent of an acquittal." United States v. Davis, 714 F.Supp. 853, 860 (S.D. Ohio 1988) aff'd, 873 F.2d 900 (6th Cir. 1989) (citations omitted). Instead, when a trial ends without either an explicit conviction or acquittal, "Saylor states that the court's task is to determine whether the termination was a result of 'the defendant's deliberate election' or 'as a result of the prosecution's action.'" Id. Combs argues that because his first § 924(c) convictions were reversed due to errors made by the prosecution and the Court, his second trial should have been barred by the Double Jeopardy Clause.

Saylor has been criticized as incorrect by other courts, United States v. Wittig, 575 F.3d 1085, 1101-02 (10th Cir. 2009); Davis, 714 F.Supp. at 860-61; State v. Wright, 203 P.3d 1027, 1036 n.13 (Wash. 2009), and the Sixth Circuit has even retreated some from that decision. United States v. Davis, 873 F.2d 900, 904-05 (6th Cir. 1989). Nevertheless, Saylor still appears to be good law in this Circuit and must be followed. Unfortunately for Combs, however, his case is distinguishable.

First, the concern voiced by the Saylor court is simply not present in this case. The primary concern in Saylor was that "a prosecutor could manipulate the trial process by indicting on several theories, introducing evidence on each, and then presenting only selected ones to the jury. The prosecution could hold the other theories 'in reserve for a subsequent or improved effort.'" Davis, 714 F.Supp. at 861 (quoting Saylor, 845 F.2d at 1408).[2] Such a concern is unwarranted in Combs's case. If the jury had acquitted Combs of the § 924(c) charges in the original indictment, he could

---

[2] As explained by Judge Kinneary in Davis, such a fear is unfounded: "if the defendant secured an acquittal on the theory charged, or if the government procured an unreversed conviction, the Double Jeopardy Clause would bar a new trial for another offense arising out of the same transaction." Davis, 714 F.Supp. at 861.

not have been retried on the second indictment.[3]  <u>Davis</u>, 873 F.2d at 905.  The elements charged in

the second indictment may be different than those presented to the jury in the first trial, "but there

is a necessary logical nexus between them, and the conduct that would have to be proved in order

to obtain a conviction would be the same under both indictments."  <u>Id.</u>  In <u>Saylor</u>, however, the Sixth

Circuit thought there was a risk that if the Defendant had been acquitted of the conspiracy charge,

he could have still been retried on the accomplice charge because there was "no necessary logical

nexus between the two theories ... ."  <u>Id.</u> (quoting <u>Saylor</u>, 845 F.2d at 1408).  Because there was no

risk that Combs could have been retried if acquitted after the first trial, <u>Saylor</u> is not applicable to

his Double Jeopardy claim.

Additionally, the type of prosecutor "negligence" the <u>Saylor</u> court sought to prevent was not

present in Combs's case.  In <u>Saylor</u>, the prosecution failed to object when the judge charged the jury

with conspiracy liability, but not accomplice liability.  The prosecutor in <u>Saylor</u> was actually aware

of the problem, since the defendant raised the lack of conspiracy evidence in his objections to the

instructions.  In Combs's case, the prosecution's (1) failure state the proper elements in the

indictment and (2) failure to object to the Court's instructions, were not due to "poor preparation"

or "illegitimate prosecutorial behavior."  <u>Saylor</u>, 845 F.2d at 1407.  Rather, as the Sixth Circuit's

opinion in <u>Combs I</u> makes clear, a genuine question existed at the time as to whether § 924(c)

criminalized two separate offenses or "simply specifies alternative means for committing the same

offense."  <u>Combs</u>, 369 F.3d at 930 (citing <u>United States v. Davis</u>, 306 F.3d 398, 416 (6th Cir. 2002)).

The errors committed during Combs's first trial were not due to "poor preparation" or "a fit of

---

[3] Similarly, if his convictions had been affirmed by the Sixth Circuit, he could not have been retried.  <u>United States v. Ewell</u>, 383 U.S. 116, 124 (1966) (retrial is barred where Government attempts to prosecute a defendant "in the face of an acquittal or an unreversed conviction for another offense arising out of the same transaction.")

absentmindedness", but rather due to legitimate doubt over what elements were required to prove a § 924(c) offense.

Combs's case is more analogous to United States v. Davis, 873 F.2d 900, 904-05 (6th Cir. 1989). In that case, the Defendant was charged with mail fraud. The indictment alleged that the defendant defrauded the victims of certain intangible rights. It failed to allege, however, that he deprived them of "money or property." Id. at 901. The defendant's conviction was overturned on appeal because the "intangible rights" theory was disavowed by the Supreme Court. Following reversal of his conviction, defendant was reindicted under the "money or property" theory. Id. Defendant argued that retrial on the "money or property" theory would violate the Double Jeopardy Clause as interpreted by Saylor.

Among other reasons, the court rejected this argument based on a finding that the prosecutor in Davis was not at fault for the mistake in the indictment. Id. at 905-06. Just prior to the Davis indictment, the Sixth Circuit had endorsed the "intangible rights" theory. The Supreme Court however, in McNally v. United States, 483 U.S. 350 (1987), reversed and disavowed the "intangible rights" theory. Accordingly, the court found that the prosecutor in Davis was not at fault for failing to predict that the Supreme Court would overrule it on the intangible rights issue. Similarly, the prosecution in this case should not be faulted for failing to predict how the Sixth Circuit would rule concerning § 924(c) when the only published case addressing the issue specifically declined to decide it. Davis, 306 F.3d at 416. The level of prosecutorial negligence or culpability in Combs I did not rise to the level contemplated in Saylor, and thus Combs's second trial was not barred by the Double Jeopardy Clause.

Finally, Combs also cites Terry v. Potter, 111 F.3d 454 (6th Cir. 1997), in support of his

contention that the second trial violated the Double Jeopardy Clause. Again, however, that case is distinguishable from Combs's. <u>Terry</u> dealt with the situation where a jury is presented with several crimes for which it could permissibly convict the defendant. In <u>Terry</u>, for example, the jury was instructed on intentional murder, wanton murder, and first-degree manslaughter. <u>Id.</u> at 455. The jury was then presented with one verdict form for each offense, and each form contained the options of guilty and not guilty. The jury found the defendant guilty of wanton murder but left the other verdict forms blank. <u>Id.</u> Terry's wanton murder conviction was ultimately reversed, and the state sought to retry him for intentional murder. <u>Id.</u> at 456.

Relying on <u>Green v. United States</u>, 355 U.S. 184 (1957), the Sixth Circuit held that retrial on the intentional murder charge was barred by the Double Jeopardy Clause. The <u>Green</u> rule, however, is not applicable to this case. In <u>Green</u>, the Supreme Court made plain the prohibition on retrial following jury silence. <u>Id.</u> at 191. Essentially, the Court held that by remaining silent on a charge for which a defendant could have been convicted, the jury's silence is an acquittal by implication. <u>Id.</u>; <u>see</u> <u>also</u> <u>Price v. Georgia</u>, 398 U.S. 323, 329 (1970). <u>Terry</u> and <u>Green</u> are simply inapplicable here because the jury in Combs's first trial was never instructed on alternative offenses for which it could have convicted or acquitted Combs, but instead remained silent.

For the reasons discussed above, Combs's Double Jeopardy, and related ineffective assistance of counsel claim, should both be denied.

**(3)    Does § 924(c) Criminalize the Act of Trading Drugs for Firearms?**

Combs's next argument relates only to Count II of the second indictment. That Count stems from Combs's receipt of guns from Josh Miller in exchange for drugs. Combs argues that insufficient evidence supported his conviction and that § 924(c) penalizes only the person who

receives drugs, but does not penalize the person who received the guns.[4]

On appeal, the Sixth Circuit found that Combs's act of trading drugs for firearms violated the "possession" prong of § 924(c). Combs, 218 Fed. Appx. at 488. Ordinarily, a 2255 motion may not be used to relitigate issues decided on appeal absent exceptional circumstances. Jones v. United States, 178 F.3d 790, 796 (6th Cir. 1999). An intervening change in controlling law is such a circumstance. Id. In this case, Combs asserts that Watson v. United States, 552 U.S. 74 (2007), represents a change in the law.

In Watson, a Supreme Court case decided after Combs II, it was held that a person who trades his drugs for guns does not "use" a firearm "during and in relation to ... [a] drug trafficking crime" within the meaning of § 924(c). Id. Clearly then, since Watson, the act of trading drugs for guns is not a "use" § 924(c) crime. Combs, however, was convicted of a § 924(c) **possession** offense. [Rs. 1, 16]. The Supreme Court did not decide whether a person who receives a gun in trade for drugs "possesses" a firearm "in furtherance of" a drug trafficking crime:

> The Government is confident that "a drug dealer who takes a firearm in exchange for his drugs generally will be subject to prosecution" under this new possession prong. Brief for United States 27; see Tr. of Oral Arg. 41 (Watson's case "could have been charged as possession"); cf. United States v. Cox, 324 F.3d 77, 83, n. 2 (C.A.2 2003) ("For defendants charged under § 924(c) after [the post- Bailey] amendment, trading drugs for a gun will probably result in ... possession [in furtherance of a drug trafficking crime]"). This view may or may not prevail, and we do not speak to it today, but it does leave the appeal to symmetry underwhelming in a contest with the English language, on the Government's very terms.

Id. at 585-86.

---

[4] To the extent Combs's argues that the evidence was insufficient to support his convictions, such a claim is barred. This issue was raised on appeal, and the Sixth Circuit held that substantial evidence supported Combs's conviction under both counts of the indictment. Combs, 218 Fed. Appx. at 484-85, 488 (6th Cir. 2007). Issues raised and rejected on direct appeal may not be relitigated in a collateral proceeding under § 2255 absent an intervening change in the law or other exceptional circumstances. See DuPont v. United States, 76 F.3d 108, 110-11 (6th Cir. 1996).

The Supreme Court's holding in Watson was based largely on the "ordinary meaning and conventions" of the word "use". Id. at 586. More specifically, the Court found that in a transaction "[a] seller does not 'use' a buyer's consideration ... ." Id. at 583 (quoting United States v. Westmoreland, 122 F.3d 431, 436 (7th Cir. 1997)). In other words, in a trade of guns for drugs, the only person who uses the gun is the person who receives the drugs.

Based on the same principle of construction employed in Watson, i.e. "language as we normally speak it," the undersigned concludes that Combs possessed firearms in furtherance of a drug trafficking crime. Id. at 583. In order to make this conclusion clear, the facts of this case will be revisited. In late 2000 or early 2001, Josh Miller traded three firearms to Leon Combs for Oxycontin. These three firearms, a Remington.270 caliber rifle, a Remington .222 caliber rifle, and a Remington .22 caliber rifle, were found during a search of Combs's residence. Miller testified that Combs did not turn over the Oxycontin until after he had the firearms in his possession. Combs, 218 Fed. Appx. at 488.

There can be no doubt that Combs "possessed" the firearms within the ordinary meaning of the word. These guns for drugs transactions took place at Combs's residence. Combs, 369 F.3d at 930. Combs took the firearms into his hands before turning over any Oxycontin to Miller. Once the drug transaction was complete, Combs stored the firearms in his home.

Whether Combs's possession of the firearms was in furtherance of a drug trafficking crime is the next question that must be addressed. Clearly, he did. A defendant possesses a firearm in furtherance of a drug trafficking crime if it was possessed "to advance or promote the commission of the underlying drug trafficking offense." Combs, 369 F.2d at 933. Combs's possession of the firearms undoubtedly advanced and promoted the commission of the underlying drug trafficking

offense. As Judge Hood noted in a Memorandum Opinion following Combs's bench trial, "Combs did not swap the drugs until he had the firearms in his possession. In other words, the drug trafficking crime would not have occurred in this instance without the firearms." [R. 16 at 6].

This conclusion finds support in the decisions of many other circuits. See United States v. Robinson, 627 F.3d 941, 955 (4th Cir. 2010); United States v. Gurka, 605 F.3d 40, 44 (1st Cir. 2010) ("We join the three circuits holding Watson does not affect the prong of 18 U.S.C. § 924(c)(1)(A) concerned with 'possession in furtherance.'"); United States v. Doody, 600 F.3d 752, 754-55 (7th Cir. 2010); United States v. Mahan, 586 F.3d 1185, 1188-89 (9th Cir. 2009); United States v. Sterling, 555 F.3d 452, 457-58 (5th Cir. 2009); see also United States v. Frederick, 406 F.3d 754, 764 (6th Cir. 2005) ("acquisition of a firearm in exchange for drugs is a sufficient 'specific nexus' between the drugs and the guns to constitute possession 'in furtherance of' the drug sale."). Trading drugs for firearms is a criminal act under the § 924(c) possession prong.

In any event, as the circuit decisions *supra* hold, Watson was **not** a change in law with respect to the "possession" § 924(c) offense for which Combs was convicted. Thus, its holding did not impact the conclusions of law reached by both Judge Hood and the Court of Appeals. Exceptional circumstances, therefore, do not exist and Combs may not use this § 2255 motion to relitigate the issue of whether he committed an offense by trading drugs for firearms. Jones, 178 F.3d at 796.

Combs also claims that "use of a firearm" is an implicit element of a § 924(c) possession offense and that the Court erred by convicting him on Count II after failing to find that Combs had "used" the rifles he received in exchange for drugs. In support, Combs relies on the following language from Combs I:

> we conclude that "in furtherance of" differs from "during and in relation to" and requires the government to prove a defendant **used** the firearm with greater participation in the commission of the crime or that the firearm's presence in the vicinity of the crime was something more than mere chance or coincidence.

Combs, 369 F.3d at 933 (emphasis added).

While this passage certainly adds a degree of confusion to the possession/use dichotomy of § 924(c), it should not be taken out of context to imply that use is also an element of the possession offense. The court was simply illustrating the differences between the "in furtherance of" and "during and in relation to" standards. The possession and use prongs are two separate offenses, and making use an element of the possession offense would blur the distinction created by Congress and clarified by the Court. Other than this passage, Combs does not point to any case law suggesting that the government must actually prove that a firearm was "used" in order to secure a conviction under the possession prong.

United States v. Frederick, 406 F.3d 754 (6th Cir. 2005), dealt with a very similar drugs for guns scenario. In that case, the court defined "in furtherance of" as helping forward, advancement, or promotion. In order to further a drug trafficking crime, the weapon must promote or facilitate the crime. Id. at 764. In order to prove that possession of a firearm furthered a drug trafficking crime, the government must show a specific nexus between the possession and the drug crime. Id. Nowhere, however, did the court require proof of use. Rather, the Court held "that acquisition of a firearm in exchange for drugs is a sufficient 'specific nexus' between the drugs and the guns to constitute possession 'in furtherance of' the drug sale." Id. § 924(c) criminalizes the act of trading drugs for firearms and Combs's claims to the contrary should be denied.

**(4)     Is § 924(c) Void for Vagueness?**

The fourth claim asserted by Combs is that 18 U.S.C. § 924(c) is constitutionally void for vagueness with respect to his conviction on Count II.  "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined."  Grayned v. City of Rockford, 408 U.S. 104, 108 (1972).  "An enactment imposing criminal sanctions or reaching a substantial amount of constitutionally protected conduct may withstand facial constitutional scrutiny only if it incorporates a high level of definiteness."  Belle Maer Harbor v. Charter Township of Harrison, 170 F.3d 553, 557 (6th Cir. 1999).  To withstand a challenge on vagueness grounds, a statute must "define the proscribed behavior with sufficient particularity to provide a person of ordinary intelligence with reasonable notice of prohibited conduct and to encourage non-arbitrary enforcement of the provision."  Id.

As previously discussed, at least four other circuits have held that § 924(c) criminalizes the act of trading drugs for firearms post Watson.  Under such circumstances, the Court is skeptical that Combs could prove the statute is void for vagueness.  Regardless of whether his claim has any merit, the Court need not address it here because Combs failed to raise it on direct appeal.  Except for a claim of ineffective assistance of counsel, a federal prisoner's failure to raise a claim on direct appeal results in a default of that claim.  Bousely, 523 U.S. at 621; Phillip v. United States, 229 F.3d 550, 552 (6th Cir. 2000).  To obtain review of a defaulted claim, the defendant must "demonstrate either cause and actual prejudice, or that he is actually innocent."  Bousely, 523 U.S. at 622.  In this case, Combs has not alleged any cause that would excuse his failure to raise this claim on direct appeal.  Nor has Combs come forward with any new evidence to show that he is actually innocent.  Id. at 622-23.  Combs's claim that 18 U.S.C. § 924(c) is void for vagueness should be denied.

**(5)     Does § 924(c) Prohibit Imposition of Multiple Sentences?**

In this claim, Combs presents two related issues: whether the Court erred by imposing a 25 year mandatory minimum sentence on Count II and whether it impermissibly amended Count II of the indictment.[5] Combs first argues that the "except" clause of § 924(c) prevents district courts from imposing multiple mandatory sentences. The clause at issue states that a mandatory minimum shall be imposed as a consecutive sentence "[e]xcept to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law ... ."

In <u>Abbott v. United States</u>, – U.S. – , 131 S.Ct. 18 (2010), the Supreme Court clarified the types of situations where the clause would operate to prevent a sentence from being imposed under § 924(c). First, an offender is not subject to stacked sentences for a single violation of § 924(c). For example, the statute imposes a minimum sentence of 5 years if a firearm is used or possessed, 7 years if the firearm is brandished, and 10 years if the firearm is discharged. If a defendant "possessed, brandished, and discharged a gun, the mandatory penalty would be 10 years, not 22." <u>Id.</u> at 23. A defendant is subject only to the highest mandatory minimum specified for his conduct in § 924(c). Second, "[i]f another provision of the United States Code mandates a punishment for using, carrying, or possessing a firearm in connection with a drug trafficking crime ... and that minimum sentence is longer than the punishment applicable under § 924(c), then the longer sentence applies." <u>Id.</u> at 29. Neither situation is present in this case, and <u>Abbott</u> does not prevent Combs from being subjected to two sentences for two separate § 924(c) offenses.

Combs apparently fails to comprehend that he was charged with two separate violations arising from two separate transactions. The first violation arose from Combs's use of a pistol during

---

[5] Combs again alleges ineffective assistance of counsel as cause for his failure to raise these issues on direct appeal.

and in relation to distribution of Schedule II controlled substances. This violation carried a mandatory minimum of 5 years. The second violation arose from Combs's possession of three firearms in furtherance of the drugs for guns transaction that he conducted with Josh Miller. Pursuant to § 924(c)(1)(C), "[i]n the case of a second or subsequent conviction under this subsection, the person shall -- be sentenced to a term of imprisonment of not less than 25 years ... ." Accordingly, Combs was sentenced to an additional 25 years on Count II as commanded by the statute. Nothing in the "except" clause prohibits this result. In fact, the Supreme Court has held that the government may secure multiple § 924(c) convictions based on a single indictment. Deal v. United States, 508 U.S. 129, 132-34 (1993) (holding that a second conviction under § 924(c) may result from the same indictment under which the first § 924(c) conviction was obtained, thereby giving rise to an enhanced term of imprisonment); see also United States v. Couch, 291 F.3d 251, 254-55 (3rd Cir. 2002); United States v. Nabors, 901 F.2d 1351, 1357-59 (6th Cir. 1990).

The next question is whether the 25 year sentence imposed on Count II constituted an impermissible amendment of the indictment. Count II charged Combs with a violation of § 924(c)(1)(A)(i), which carries a 5 year mandatory minimum. At sentencing, however, the Court found that because Count II constituted a second offense under that section, the mandatory minimum was 25 years under § 924(c)(1)(C). [R. 37 at 14]. Combs now argues that imposition of a 25 year mandatory minimum constituted an improper amendment of the indictment because he was only charged with violating § 924(c)(1)(A)(i), not subsection (c)(1)(C).

A close reading of the statute, however, reveals that subsection (c)(1)(C) is not a separate crime, but rather is a penalty enhancement for those individuals who have committed a previous § 924(c)(1)(A)(i) crime. Because the enhancement for a second or subsequent offense is a sentencing

factor, it need not be charged in the indictment.  See United States v. Woodruff, 296 F.3d 1041, 1050

(11th Cir. 2002).  Accordingly, by sentencing Combs on Count II pursuant to subsection (c)(1)(C),

the Court did not amend the indictment.  Instead, it simply applied a sentencing factor designed to

punish those who have violated § 924(c) multiple times.

**(6)      Did the Prosecution Commit Fraud on the Court?**

Finally, Combs seeks relief pursuant to Federal Rule of Civil Procedure 60 alleging that the

prosecution committed fraud upon the Court.  While a Rule 60 motion may be used "to set aside a

habeas denial", it "does not itself seek habeas relief."  Harris v. United States, 367 F.3d 74, 80 (2d

Cir. 2004).  Accordingly, the undersigned will construe Combs's Rule 60(d)(3) motion as a second

§ 2255 petition.  [R. 67].  Combs alleges that the prosecutor engaged in misconduct by: (1) acting

with reckless disregard for the Sixth Circuit's mandate in Combs I, (2) failing to move for dismissal

of Counts III and IV of the first indictment before re-indicting Combs, and (3) by bringing the

second indictment in a different division with a new case number.

Combs argues that all of these actions were designed to pull the wool over the eyes of the

Court.  That is, the prosecutor engaged in this conduct to hide the fact that Combs's Double

Jeopardy rights had been violated.  Combs, however, has failed to prove the elements of a fraud

upon the court claim.  The elements consist of conduct:

1. On the part of an officer of the court;
2. That is directed to the "judicial machinery" itself;
3. That is intentionally false, willfully blind to the truth, or is in reckless
   disregard for the truth;
4. That is a positive averment or is concealment when one is under a duty to
   disclose;
5. That deceives the court.

Demjanjuk v. Petrovsky, 10 F.3d 338, 348 (6th Cir. 1993).  First, Combs has failed to show how the

Court was deceived. Even absent the prosecutorial conduct complained of by Combs, the Court still would have ruled against him on the Double Jeopardy issue. As has already been explained in detail, the second trial did not implicate Combs's Double Jeopardy rights.

Second, Combs has failed to point to any conduct that was either intentionally false, willfully blind to the truth, or in reckless disregard for the truth. Combs asserts that the second indictment was a "false or forged" document submitted to the Court. He rests this conclusion upon his belief that the second indictment was obtained in violation of the Sixth Circuit's mandate in Combs I. Again, as the Court has already explained, the second indictment and trial were not contrary to the mandate rule. Combs also cites a passage from a Second Circuit case to further bolster his claim that the second indictment was a "fraudulent" document. In United States v. Tran, 234 F.3d 798 (2d Cir. 2000), overruled by United States v. Thomas, 274 F.3d 655 (2d Cir. 2001), the court stated that "if the government wishes to seek re-indictment of [defendant] Som on the § 924(c) count, the government must move the district court to vacate Som's conviction and dismiss that count of the indictment for that purpose." Id. at 810. Although the prosecution in Combs's case did not follow the instructions given by the Tran court, it is difficult to see how that would amount to fraudulent conduct considering Tran is a Second Circuit case and the language cited by Combs seems to be specific remand instructions rather than a statement of law.

The Defendant's claim that the prosecution committed fraud upon the court is without merit and should be denied.

**(7)    Evidentiary Hearing**

Section 2255 directs the Court to hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C.

26

§ 2255(b). Thus, to receive a hearing, a petitioner must make allegations that raise at least some possibility of relief. "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." <u>Valentine v. U.S.</u>, 488 F.3d 325, 333 (6th Cir. 2007) (quoting <u>Arredondo v. U.S.</u>, 178 F.3d 778, 782 (6th Cir. 1999)). An evidentiary hearing is also not required where "there is nothing in the record to indicate that [the] defendant would [be] able to prove his allegations at an evidentiary hearing." <u>Amr v. U.S.</u>, 280 F. App'x 480, 485 (6th Cir. 2008). Combs's § 2255 petition raises primarily legal issues. He has not identified any additional evidence that he could present to demonstrate that his claims have merit. Accordingly, no evidentiary hearing is warranted.

<u>IV. CONCLUSION</u>

For the reasons set forth above, it is RECOMMENDED that the Defendant's Motions to Vacate, Set Aside, or Correct Sentence [R. 52, 64, 67, 78, 98] be DENIED. It is further ORDERED that the Defendant's motion to add an exhibit to the case record [R. 80] is DENIED.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Report and Recommendation. Specific objections to this Report and Recommendation must be filed within fourteen days from the date of service thereof or further appeal is waived. <u>United States v. Campbell</u>, 261 F.3d 628, 632 (6th Cir. 2001); <u>Thomas v. Arn</u>, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004); <u>Miller v. Currie</u>, 50 F.3d 373, 380 (6th Cir. 1995).

Signed June 17, 2011.



Signed By:

_Edward B. Atkins_

United States Magistrate Judge